Filed 2/5/25  P. v. Jimenez CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>CHRISTIAN ISAIAH JIMENEZ,<br><br>        Defendant and Appellant. | A172261<br><br>(Riverside County Super. Ct.<br>  No. INF1901566) |

Defendant Christian Isaiah Jimenez appeals his conviction of second degree murder, asserting insufficient evidence supported the malice finding. Jimenez further contends the court erred in declining to strike the firearm enhancement.  We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

M.M.[1] hosted a party at her parent's house while they were absent.  In addition to inviting various friends, M.M. also invited Jimenez, whom she had met through social media few months earlier.  Although M.M. told Jimenez he could bring one friend, he showed up with approximately four or five other individuals, and they arrived in two vehicles.

---

[1] Because some of the individuals involved were minors, we use initials to safeguard their privacy.

M.M. testified that everyone was hanging out in the kitchen, living room and backyard, and only she and her cousins were allowed in the bedrooms. During the party, M.M. noticed a light on in her parents' bedroom. When she went to investigate, she saw Jimenez and one of his friends "gathering my parents' stuff." She screamed, and Jimenez ran out of the bedroom and left the house, while his friend jumped out the window. M.M. testified her parents' bedroom and other bedrooms were "destroyed." She believed they were stealing jewelry and other items.

While party attendees gave conflicting accounts of the ensuing conflict between Jimenez and M.M.'s friends, it appears Jimenez left and then returned to the house two times.

After M.M. announced the theft to her friends, the party attendees gathered in the front yard. Jimenez began to drive away from the party, but returned to pick up A.P., T.D., and A.T. Upon his return, Jimenez was confronted by party attendees yelling at him to return the stolen property. He exited his car, denied taking any property, and showed them his pockets were empty. Jimenez and Sosa engaged in a five-minute argument. Multiple individuals testified Sosa had been heavily drinking. M.M. testified Jimenez then went to his vehicle, returned with a gun, and threatened to shoot them if they called the police. Another party attendee testified Jimenez asked if anyone wanted to fight and he mentioned having a gun. A.T. provided a conflicting account; she stated Jimenez did not say anything and just observed all the people yelling.

A.T. asked Jimenez for a ride and got into his vehicle. A.T. testified Jimenez drove to the end of the block and then stopped, stating he needed to get his friends. A.T. remained in the vehicle while Jimenez walked back to the house. A.P. testified he first saw Jimenez when Jimenez was walking

toward the house with his vehicle parked on the street. M.M. was angry and still yelling about property being stolen. T.D. also first saw Jimenez when Jimenez was walking down the street toward the house calling, "let's go," with his vehicle parked around the corner. T.D. and A.P. walked toward Jimenez; Sosa followed a few feet behind them, insisting that Jimenez needed to return the stolen property. A.T. observed Jimenez returning to the vehicle with three or four other people, and she noticed another individual approximately ten feet behind following them.

Jimenez, T.D., and A.P. entered the vehicle. Jimenez saw Sosa approaching and took a gun from T.D. When Sosa approached the vehicle and asked them to "talk about it," Jimenez, A.P., and T.D. exited the vehicle. Sosa was approximately five to ten feet away. A.P. and T.D. both testified that Jimenez warned Sosa that he had five seconds to walk away from the vehicle or else Jimenez would shoot him. In response, Sosa backed away a couple of steps. Jimenez counted down from five and then shot Sosa. A.P., T.D., and Jimenez did not see Sosa with a gun or any other weapon. At the time Sosa was shot, his hands were empty and down by his sides at around waist height. Jimenez, A.P., and T.D. then ran back to the vehicle and drove away.

Shortly after Sosa followed Jimenez, T.D., and A.P. to Jimenez's vehicle, M.M. heard a gunshot and yelling. Party attendees called the police, who were dispatched to the scene. Police discovered Sosa had been shot in the abdomen. He died a few hours later due to internal bleeding.

Jimenez testified in his defense. Jimenez stated he did not fully remember the incident because he had been drinking and using drugs. He did not bring a gun to M.M.'s house and was not aware if anyone else had a gun. However, M.M. informed him that Sosa either had a gun or pulled a

3

gun on someone the previous night. After drinking for a few hours, he went to the bathroom and then looked into a bedroom out of curiosity. M.M. found him in the bedroom and starting yelling about him stealing property. Jimenez denied stealing anything.

Jimenez stated he became scared when M.M. started to call for help, including from Sosa, so he pushed past M.M. and left the house. When he exited the house, he saw the other vehicle leaving, and he got into his car because he was "scared" and "trying to get out of there." After initially driving away from the house, Jimenez remembered A.P., T.D., and A.T. were still at the party and drove back to get them. When he pulled up in front of the house, "everyone" was in the front yard accusing him of stealing. However, he got out of his car and asked Sosa if he wanted to fight.

After arguing with Sosa, Jimenez and A.T. got into his car, and Jimenez drove around the corner and stopped the car. He walked back to the house to get T.D. and A.P. Party attendees were continuing to yell at him to return the property and confess to stealing. After getting his friends and returning to the car, he saw Sosa approach the vehicle. Jimenez testified he felt scared, but he, T.D., and A.P. exited the vehicle and started arguing with Sosa. Jimenez stated that "there was a countdown" and he "heard a shot," and he then ran to the car because he felt scared. Jimenez stated he did not remember getting a gun, threatening Sosa, counting from five, or shooting Sosa.

*Procedural Background*

The Riverside County District Attorney filed an information charging Jimenez with first degree murder (Pen. Code,[2] § 187, subd. (a); count 1). The

---

[2] All undesignated statutory references are to the Penal Code.

information further alleged personal and intentional discharge of a firearm, causing death (§ 12022.53, subd. (d)).

The jury found Jimenez guilty of second degree murder and the firearm enhancement true. The trial court sentenced Jimenez to a prison term of 15 years to life for murder, and 25 years to life for the discharge of a firearm causing death. Jimenez timely appealed.[3]

## DISCUSSION

Jimenez raises two arguments on appeal. First, he contends his second degree murder conviction must be reduced to voluntary manslaughter because insufficient evidence supports the malice finding. Second, Jimenez contends the court abused its discretion by refusing to strike the firearm enhancement based on mitigating circumstances, and the court failed to expressly find that a dismissal would endanger public safety.

## I. Sufficiency of the Evidence

Jimenez does not directly contest the sufficiency of the evidence supporting a malice finding. Rather, he argues any evidence of malice was negated because the shooting occurred due to provocation and/or in the heat of passion. We disagree.

### A. Relevant Law

In considering a substantial evidence challenge to a jury verdict, we "review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v.*

---

[3] On December 23, 2024, this case was fully briefed. On January 15, 2025, the case was transferred by California Supreme Court Order from the Fourth Appellate District, Division Two (where it had been designated case No. E081893) to the First Appellate District.

5

*Albillar* (2010) 51 Cal.4th 47, 60.) We determine the sufficiency of the evidence after considering the whole record and a defendant may not obtain reversal because the circumstances may also support a different finding. (*People v. Johnson* (1980) 26 Cal.3d 557, 577.)

Murder is the unlawful killing of a person with malice aforethought. (*People v. Soto* (2018) 4 Cal.5th 968, 974.) "A person who intentionally kills in a 'sudden quarrel or heat of passion' [citation] or in the unreasonable but good faith belief in having to act in self-defense (imperfect self-defense), lacks malice. (*People v. Dominguez* (2021) 66 Cal.App.5th 163, 174 (*Dominguez*).)

Voluntary manslaughter based on heat of passion has both an objective and a subjective component. (*People v. Moye* (2009) 47 Cal.4th 537, 549.) "The provocative conduct by the victim . . . must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection." (*Id.* at p. 550.) "Subjectively, the defendant must have killed while under ' "the actual influence of a strong passion" induced by such provocation.' [Citation.] The passion aroused need not be anger or rage, but can be any intense emotion other than revenge." (*Dominguez*, *supra*, 66 Cal.App.5th at p. 175.)

**B. Analysis**

The record lacks evidence as to both the objective and subjective elements of provocation.

As to the objective element, the evidence fails to demonstrate Sosa's conduct was " 'sufficient to arouse the passions of the ordinarily reasonable man.' " (*People v. Steele* (2002) 27 Cal.4th 1230, 1252–1253.) Sosa repeatedly yelled at Jimenez to return the stolen property and continued to do so while following Jimenez and his friends to his car. Such verbal comments are insufficient to constitute provocation. (E.g., *People v. Najera* (2006) 138

6

Cal.App.4th 212, 226 [" ' "[a] provocation of slight and trifling character, such as words of reproach, however grievous they may be, or gestures, or an assault, or even a blow, is not recognized as sufficient to arouse, in a reasonable man, such passion as reduces an unlawful killing with a deadly weapon to manslaughter" ' "].)  The evidence demonstrates Sosa was unarmed, kept his hands down by his sides, and took a few steps backwards when confronted by Jimenez.  None of the multiple witnesses reported Sosa engaging in any conduct that physically threatened Jimenez.  Sosa kept five to ten feet between himself and Jimenez's vehicle.  Jimenez was safely inside his vehicle with A.P., T.D., and A.T. when he decided to exit the vehicle and confront Sosa.  And Jimenez confronted Sosa while supported by A.P. and T.D., whereas Sosa was alone.

The evidence also does not support a finding that the subjective element was met, i.e., that Jimenez was under " 'the actual influence of a strong passion' induced by such provocation." (*People v. Moye*, *supra*, 47 Cal.4th at p. 550.)  Undoubtedly, " 'immediate fear and panic' can, in an appropriate case, provide evidence from which 'a reasonable jury could infer that defendant was aroused to passion.' " (*Dominguez*, *supra*, 66 Cal.App.5th at p. 175; see also *In re Hampton* (2020) 48 Cal.App.5th 463, 480 [defendant testified that, without thinking, he fired when the victim lunged at him because he was scared that he would be shot].)  However, the emotion "must be so strong that the defendant's reaction bypassed his thought process to such an extent that judgment could not and did not intervene.' " (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 649; *People v. Rangel* (2016) 62 Cal.4th 1192, 1225 [" 'provocation must be one that would cause an emotion so intense that an ordinary person would simply *react*, without reflection.' "].)  But here, Jimenez's trial testimony provided minimal support for a

provocation or heat of passion theory.  Although Jimenez stated he was scared, the record does not indicate Jimenez shot Sosa as a fear reaction without thought.  Rather, in response to Sosa's yelling, Jimenez exited his vehicle and engaged Sosa in an argument.  Jimenez told Sosa he would count down from five and then shoot him, and Jiminez proceeded to do exactly that.  This evidence reflects reasoned, not rash, action.

In sum, there is no substantial evidence of provocation, and substantial evidence supports the jury's verdict of second degree murder.

## II.  Firearm Enhancement

Jimenez next contends the trial court abused its discretion by declining to strike the firearm enhancement based on the mitigating factors of his age and lack of a " 'violent criminal background.' "  Jimenez also asserts the mitigating factor of section 1385, subdivision (c)(2)(C)—application of an enhancement could result in a sentence of over 20 years—applies.  Jimenez asserts the trial court was required to afford "great weight" to these mitigating circumstances and failed to make a requisite finding that striking the enhancement would endanger public safety.

Section 1385, subdivision (c) authorizes a trial court to dismiss an enhancement "if it is in the furtherance of justice to do so."  Subdivision (c)(2) provides, "[i]n exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  As relevant here, subparagraph (C) applies if "[t]he application of an enhancement could result in a sentence of over 20 years."  (§ 1385, subd. (c)(2)(C).)  Subdivision

8

(c)(4) further provides "[t]he circumstances listed in paragraph (2) are not exclusive and the court maintains authority to dismiss or strike an enhancement in accordance with subdivision (a). (§ 1385, subd. (c)(4).)

In his opening brief, Jimenez argues that section 1385, subdivision (c)(2) creates a rebuttable presumption requiring dismissal of an enhancement if one or more mitigating circumstances is present "unless and until" there is a finding that such dismissal would endanger public safety.

As Jimenez acknowledges in his reply brief, after he filed his opening brief the California Supreme Court rejected his interpretation and held that section 1385 does not establish such a presumption. (*People v. Walker* (2024) 16 Cal.5th 1024, 1032.) The *Walker* Court explained that, in most cases, " 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in subdivision (c)(2)." (*Id*. at p. 1033.) Conversely, "if the [trial] court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Id*. at p. 1029.) *Walker* reemphasized that "ultimately, the court must determine whether dismissal is in furtherance of justice." (*Id*. at p. 1036.)

In exercising its discretion under section 1385, the trial court may consider aggravating factors such as those outlined in California Rules of Court, rule 4.421 or rule 4.410. (See *Walker*, *supra*, 16 Cal.5th at p. 1033 [citing rule 4.421, among other things, in discussing a court's discretion

9

under § 1385, subd. (c), and noting, "notwithstanding the presence of a mitigating circumstance, the trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry' "]; see also *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1097 ["The language of section 1385(c)(2) . . . reflects a legislative recognition that a trial court's exercise of sentencing discretion" includes " '[g]enerally applicable sentencing principles,' " including consideration of circumstances in aggravation and mitigation, citing rule 4.410].)

Jimenez correctly notes the trial court did not provide its reasoning for declining to strike the enhancement. However, section 1385 does not require trial courts to make express findings when *declining* to dismiss an enhancement. (§ 1385, subd. (a) [only requiring courts to state on the record "[t]he reasons for the dismissal"].) Accordingly, the court's failure to expressly state its reasoning is not dispositive and we presume the trial court was aware of and applied the governing law. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390; accord *People v. Brown* (2007) 147 Cal.App.4th 1213, 1229 ["[R]emand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion. Error may not be presumed from a silent record."].)

Here, the record demonstrates the trial court was aware of its discretion to reduce or strike the firearms enhancement, and it specifically asked the parties about factors that should impact the court's exercise of its discretion. In response, the prosecutor argued Jimenez was an adult at the time of the incident and a danger to the community. The prosecutor emphasized the details of the crime the unreasonableness of Jimenez's conduct—i.e., that Sosa "did nothing" to cause his murder apart from asking

10

for stolen property to be returned, yet Jimenez "murder[ed] him in cold blood." The prosecutor thus argued that, without a long prison term, the court cannot be assured "there will not be another innocent victim to gun violence at the hands of [Jimenez]."

Likewise, the probation report emphasized the seriousness and violence of the crime. It highlighted that, in response to being accused of burglary, Jimenez made threats that he was armed, brandished a firearm, ignored his friends' attempts to calm him down, counted to five, and then proceeded to shoot Sosa before fleeing the scene.[4] The probation report noted Jimenez's history of drug and alcohol abuse and his criminal record. It stated Jimenez had been in the juvenile criminal justice system since 2015 and has "continued committing crimes," including a new active case "related to drugs/alcohol in jail." The report concluded, "[I]t appears his incarceration has had little impact on his criminality . . . . [D]ue to the egregious nature of his actions here, the defendant is both ineligible and completely unsuitable for probation. He poses a significant threat to the public's safety . . . ."

In response, defense counsel argued Jimenez was young and intoxicated at the time of the incident, with no serious violent history. He noted it was a "horrible situation" that "went way out of control."

The sentencing judge also had presided over the trial, and thus was well versed in the facts of the crime. The court understood its discretion and allowed the parties to identify and argue about the applicability of any mitigating or aggravating factors. Nothing in the record indicates the court

---

[4] The People's sentencing memorandum also highlighted the seriousness of Jimenez's crime and identifies several aggravating factors and his public safety risk. However, the transcript of the sentencing hearing suggests the court may not have seen the People's sentencing memorandum prior to the hearing, and we need not rely on it to reach our conclusion here.

misunderstood its role or failed to appropriately consider any relevant factor. Instead, the record supports an inference that the court considered section 1385 and concluded that Jimenez constituted a serious risk to public safety, or that dismissal of the enhancement was not in furtherance of justice. The court's decision to decline to dismiss the enhancement was supported by "substantial, credible evidence of countervailing factors" sufficient to neutralize the great weight of any mitigating circumstance. (*Walker*, *supra*, 16 Cal.5th at p. 1036.) Accordingly, we find no abuse of discretion.

## DISPOSITION

The judgment is affirmed.

_____
PETROU, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
RODRÍGUEZ, J.


*People v. Jimenez*/A172261

13